COUNTY OF INGHAM v DEPARTMENT OF SOCIAL SERVICES

1. SOCIAL SECURITY AND PUBLIC WELFARE—WORDS AND PHRASES—
   PUBLIC ACTS—COUNTY MEDICAL CARE FACILITIES—TOTAL AU-
   DITED COST—DEPRECIATION COSTS—MEDICAID.
   The term "total audited cost" as used in an act appropriating
   state funds for reimbursement by the Department of Social
   Services of operating expenses of county medical care facilities
   under the Medicaid program, means the total resources neces-
   sary to provide goods and services; absent any legislative impli-
   cation of exclusion, this term includes depreciation costs, and a
   claim by a county facility for such costs must therefore be
   honored by the department.

2. SOCIAL SECURITY AND PUBLIC WELFARE—MEDICAID—WORDS AND
   PHRASES—STATUTES—CAPITAL EXPENDITURES—DEPRECIATION
   COSTS—COUNTY MEDICAL CARE FACILITIES.
   A statute which restricts distribution of general relief money for
   capital expenditures for county medical care facilities does not
   prohibit payment of depreciation costs under the Medicaid
   program because the terms "capital expenditures" and "depre-
   ciation costs" are not coextensive, a legislative prohibition on
   state payments for the former does not necessarily connote the
   prohibition of the latter, and the statute concerns an entirely
   different reimbursement formula for a program entirely differ-
   ent from Medicaid (MCLA 400.18).

Appeal from Court of Claims, Allan C. Miller, J.
Submitted June 3, 1975, at Lansing. (Docket No.
21414.) Decided July 22, 1975.

Complaint by Ingham County against the State
of Michigan, the Michigan Department of Trea-
sury, and the Michigan Department of Social Ser-
vices for reimbursement under the Medicaid pro-

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 70 Am Jur 2d, Social Security and Medicare § 1 *et seq.*

gram of depreciation expenses of a county medical care facility. Judgment for plaintiff. Defendants appeal. Affirmed.

*Michael G. Harrison,* Ingham County Corporation Counsel, for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Roderick T. MacGillis,* Assistant Attorney General, for defendants.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Plaintiff operates the Ingham County Medical Care Facility. The facility is funded primarily from revenue from the Medicaid program. It also receives revenue from county general taxes, Medicare, and private patients and insurance carriers.

While Medicare, under 79 Stat 290 (1965); 42 USCA 1395, is wholly financed and administered by the Federal government, Medicaid, under 79 Stat 343 (1965); 42 USCA 1396, is financed equally by the State of Michigan and the Federal government. The Medicaid funds are administered by the Michigan Department of Social Services under a reimbursement formula set forth in the annual appropriation acts.

The Medical Care Facility, since 1969, has received reimbursement payments from the Federal government under the Medicare program for depreciation expenses incurred in connection with the treatment of Medicare patients. It was the policy of the Department of Social Services, however, to not reimburse claims for depreciation expenses by county medical institutions under the

Medicaid program. A state field audit of the facility, conducted in 1972, disallowed reimbursement for depreciation expenses.

This dispute involves the plaintiff's claim for reimbursement of depreciation costs for the years 1969 to 1972 inclusive. The Court of Claims awarded the plaintiff $93,694 under two counts of the plaintiff's complaint.[1] Defendants appeal as of right.

On appeal, the defendants argue that the state is not required by either Federal or state statutes or regulations to reimburse depreciation costs and that such payments would be contrary to Michigan statutes and governmental accounting practices. Plaintiff counters that these payments are authorized by the appropriation statutes and are not prohibited by any other state or Federal legislation.

The resolution of this issue depends primarily upon the construction to be accorded to the relevant appropriation acts: 1969 PA 316, § 13; 1970 PA 99, § 14; 1971 PA 230, § 15; 1972 PA 206, § 14. The language of the four acts is almost identical to the following quotation of § 14 of the 1970 act:

"Facilities providing care under these programs shall submit data and cost information to the legislative auditor general on forms supplied by him * * * .

\* \* \*

"[I]t shall be used by the department of social services

---

[1] Although defendants state that they are appealing as to the award under both counts, their arguments only discuss the claim for reimbursement of depreciation costs. The other claim, for reimbursement of certain operating costs, involves a small portion of the total award. A statement of position without supporting citations is insufficient to bring the issue before this Court. *Kucken v Hygrade Food Products Corp,* 51 Mich App 471, 473; 215 NW2d 772 (1974). Consequently, this decision will consider only the appeal from the depreciation reimbursement claim.

to make adjustments in the daily rate of reimbursement. In no case shall rates exceed $15 per patient day for skilled nursing care * * * .

*     *     *

"Rates paid for nursing care in chronic care facilities and in chronic care units of general hospitals shall not exceed the maximum rate as defined by the director, department of social services, and paid in county medical institutions. From the appropriations made in section 1 of this act the state shall pay for nursing care in county medical institutions, chronic care facilities and chronic care units of general hospitals the daily rate as determined by the director of the department of social services plus 40% of the difference between that rate and the total audited cost for the institution in those facilities where the total daily cost exceeds the determined rate."

The parties agree that the resolution of the issue depends upon what meaning is placed on the payment of the "total audited cost".[2] No appellate courts in this jurisdiction have yet interpreted this provision.

Whether it is a matter of sound accounting principles for a governmentally-operated health care facility to claim depreciation costs avoids the determinative issue of legislative intent. Defendants' assertion that the adjective "audited" implies that "uniform" accounting principles be applied is contradicted by the department's own policies. The appropriation act makes no distinction between chronic care facilities and chronic care units of general hospitals. Despite this fact, the department, as a matter of policy, reimbursed both private and public general hospitals for their depreciation costs for extended care treatment under

_____

[2] The 1972 appropriation act, § 14 of 1972 PA 206, reads "total cost audited". For purposes of determining whether depreciation costs are to be included, we perceive that this language difference has no effect on the outcome of this case.

Medicaid. No adequate explanation for this financial discrimination has been offered.

It is also important to note that the department abruptly reversed its previous policy in the middle of fiscal year 1972–1973. Beginning in January, 1973, all institutions providing extended care facilities under Medicaid, including county extended care facilities, were reimbursed for depreciation expenses. Neither the 1972 nor the 1973[3] appropriation acts contained language which would justify such an alteration in policy. The defendants appear to be arguing that the Department of Social Services may reinterpret at will what the Legislature has provided as to financial assistance for medical care facilities. There is no indication that the Legislature extended to these state agencies the power to select which facilities in a given year should be reimbursed for certain costs.

We conclude that the "total audited cost" language of the appropriation act means the total resources necessary to provide goods and services. Absent any legislative implication of exclusion, this includes depreciation expenses. See *Fairbanks, Morse & Co v City of Wagoner, Oklahoma,* 81 F2d 209, 219 (CA 10, 1936).

MCLA 400.18; MSA 16.418, which restricts general relief capital expenditures to county medical care facilities, does not prohibit payment of depreciation costs under the Medicaid program. If this were true, then the department's policy change in 1973 would have been unlawful. The terms "capital expenditures" and "depreciation costs" are not co-extensive. The fact that the Legislature would prohibit the former does not necessarily connote the prohibition of the latter. In any event, MCLA 400.18; MSA 16.418 concerns an entirely different

---

[3] 1973 PA 131.

reimbursement formula for a different legislative program. *Cf.* MCLA 400.115; MSA 16.490(25). This statute, which was promulgated in 1950, does not limit the funds the Legislature may provide as a matching grant with the Federal government under the Medicaid program.

The judgment and recovery in favor of the plaintiff is affirmed.