KENT COUNTY v DEPARTMENT OF SOCIAL SERVICES

Docket No. 81792. Submitted July 8, 1985, at Grand Rapids.—Decided March 17, 1986.

Petitioner, Kent County, challenged the system implemented by the Department of Social Services for reimbursement to the county-operated Kent Community Hospital for skilled nursing care provided to persons entitled to Medicaid. Specifically, petitioner objected to the formula used by DSS which includes amounts which persons classified as "medically needy" are able to pay in its calculation of the "total audited costs" of the hospital, upon which the amount of reimbursement is based. The Kent Circuit Court, Roman J. Snow, J., upheld the decision of the Director of the DSS, who determined that the formula was proper. Petitioner appealed. *Held:*

1. The formula used by DSS is proper. The calculation proposed by the petitioner would result in disparate financial assistance from the state to persons of equal need, which is impermissible.

2. Petitioner's allegation that it was denied due process of law by the fact that the decision in this matter was made by the Director of the DSS is without merit, as the county, being a creature of the Legislature, has no due process rights to invoke. Furthermore, there was no showing on the record that the director was incapable of rendering an impartial decision or failed to do so.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION.

A court, in construing a statute, accords due deference to the construction placed upon the statute by the agency responsible for its administration.

2. SOCIAL SERVICES — MEDICAID — HOSPITALS.

The formula used by the Department of Social Services for

REFERENCES

Am Jur 2d, Social Security and Medicare §§ 24, 75, 87.

Am Jur 2d, Statutes §§ 142, 143, 161, 204, 275.

See the annotations in the ALR3d/4th Quick Index under Hospitals; Medical Treatment or Care.

reimbursement to hospitals for skilled nursing care provided to Medicaid recipients, in which the "total audited cost" of an institution's care of medically needy persons includes costs for services for which the eligible person is able to pay, is a proper formula which results in an equitable distribution of the Medicaid funds.

3. Counties — Due Process.
   A local unit of government, such as a county, is created by legislation and has no due process rights to invoke against its creator.

*Riddering, Schmidt & Howlett* (by *Judy E. Bregman*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *William K. Basinger,* Assistant Attorney General, for defendant.

Before: WAHLS, P.J., and ALLEN and J. C. RAVITZ,* JJ.

C. RAVITZ, J. In this case, petitioner challenges the Medicaid reimbursement system implemented by the Department of Social Services pursuant to the annual social welfare medical assistance appropriations acts. Petitioner appeals as of right from a circuit court order affirming the decision of the Director of the Michigan Department of Social Services.

The instant dispute concerns the DSS's method of computing the reimbursement due county-operated Kent Community Hospital (KCH) for skilled nursing care provided for persons entitled to Medicaid. Before discussing petitioner's specific objection to the DSS's computation method, it would be helpful to briefly outline the federal-state cooperative program under the Social Security Act.

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

I

Under Title XIX of the Social Security Act, 42 USC 1396 *et seq.,* the federal government provides grants-in-aid to states that administer programs for supplying medical assistance to specified categories of needy individuals and families. The state plan must conform with certain federal statutory requirements and the accompanying regulations. § 1396a. Specifically, participating states are required to provide medical services to certain individuals and families, *i.e.,* those eligible through such programs as Aid to Families With Dependent Children and Supplemental Security Income for the Aged, Blind, and Disabled. See § 1396a(a)(13). These individuals and families comprise the "categorically needy". *Friedman v Berger,* 547 F2d 724 (CA 2, 1976), *cert den* 430 US 984; 97 S Ct 1681; 52 L Ed 2d 378 (1977). In addition to the mandatory provisions of medical care to the "categorically needy", a state also has the option of providing services to those categorized as "medically needy" and Michigan has elected to provide such services. See MCL 400.106(1)(b)(iii); MSA 16.490(16)(1)(b)(iii), 42 USC 1396(a)(10)(A)(ii). The "medically needy" are those whose income exceeds that of the "categorically needy" but is insufficient to cover medical care. MCL 400.106(1)(b)(iii); MSA 16.490(16)(1)(b)(iii). Under this branch of the Medicaid program, the state will pay the medical expenses of eligible persons whose income is not sufficient to cover their medical expenses. These individuals are eligible for medical assistance once their own expenses for medical care have effectively reduced their income to that level which entitles persons to medical assistance as "categorically needy" persons. *Id.* The state is responsible only for the difference between its established fee

schedule and the amounts these individuals are able to pay. The individual is responsible for the remainder, the "patient pay amount" (PPA). See *Winter v Quern,* 490 F Supp 788, 790-791 (ND Ill, 1980). It is the reimbursement for care of these "medically needy" persons that lies at the heart of this controversy.

## II

At issue is reimbursement for the years 1969 through 1974. The resolution of this issue depends primarily on the construction to be accorded the relevant appropriations acts under which the DSS disburses Medicaid funds: 1969 PA 316, § 13; 1970 PA 99, § 14; 1971 PA 230, § 15; 1972 PA 206, § 14; 1973 PA 131, § 17; and 1974 PA 241, § 21. The language of the six acts is almost identical and provides the following reimbursement formula, or fee schedule, as quoted from section 13 of the 1969 act:

> "*[T]he state shall pay* for skilled nursing care in county medical institutions, chronic care facilities and chronic care units of general hospitals *the daily rate* as determined by the director of the department of social services *plus 40% of the difference between that rate and the total audited cost* for the institution in those facilities where the total daily cost exceeds the determined rate." (Emphasis added.)

The county does not dispute the DSS's determination of the daily rate amounts. The county challenges the DSS's method of determining the total audited cost for KCH in its care of "medically needy" individuals.

The "total audited cost" of an institution is "the total resources necessary to provide goods and services" to eligible patients. *Ingham County v*

*Dep't of Social Services,* 62 Mich App 683, 687; 233 · NW2d 833 (1975). Under the DSS's present formula of reimbursement, the total audited cost of an institution's care of medically needy persons includes costs for services for which the eligible person is able to pay, *i.e.,* amounts compensated by the PPA. The PPA is then deducted when the DSS reimburses a facility for 40% of the difference between the daily amount and the total audited cost. The county contends that DSS may not include the PPA in the total audited costs, since the individual, not the DSS, is liable for that amount. The DSS counters that subtraction of the PPA from the total audited cost would cause DSS payment in excess of the 40% over daily rate amount mandated by the Legislature with respect to that portion of costs reimbursed by the PPA.

We agree with the DSS and affirm. At the outset, it must be noted that this issue must be reviewed with respectful consideration of the DSS's interpretation, since due deference is accorded the construction placed upon legislation by the agency responsible for its administration. *Bd of Ed of Oakland Schools v Superintendent of Public Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977). In light of the consideration given the DSS's interpretation, we find its interpretation of "total audited cost" to be reasonable.

Petitioner's construction assumes that eligibility of the "medically needy" is contingent upon payment of the PPA. In fact, Medicaid eligibility is determined in advance. *Berrien County v Michigan,* 136 Mich App 772, 782; 357 NW2d 764 (1984). As Medicaid-eligible persons whose eligibility is determined in advance, the medically needy must pay their portion of medical costs based on the reimbursement rate paid by the state for the categorically needy. Any other computation of the

PPA would result in disparate financial assistance from the state to persons of equal need depending on whether a patient is medically needy or categorically needy. This is impermissible. 42 USC 1396a(a)(10)(B)(i), (ii); 42 USC 1396a(a)(17). See *Massachusetts Ass'n of Older Americans v Sharp,* 700 F2d 749 (CA 1, 1983); *Winter v Quern, supra.*

Respondent's formula results in equal billings for hospitals for care for the medically needy and the categorically needy when the PPA is determined based on the rate paid by the state for the categorically needy. Petitioner's formula does not. In these circumstances, we find that deference to the DSS's determination of reimbursement due a hospital is reasonable. As noted by respondent, permitting greater total reimbursement to a hospital for care of a medically needy patient than for a categorically needy person would be an anomaly.

### III

Petitioner claims that it was denied due process of law when the Director of the Department of Social Services, who petitioner claims is incapable of being unbiased, made the final agency determination of this controversy concerning the reimbursement due petitioner.

Local units of government are creatures of legislation. *DeWitt Twp v Clinton County,* 113 Mich App 709, 716; 319 NW2d 2 (1982). As such, they have no due process rights to invoke against the will of their creator. *Id.,* p 717.

Moreover, even if petitioner could pursue a due process claim, this record does not warrant relief. There is no showing that the Director of the Department of Social Services was incapable of rendering an impartial decision or that he failed

to do so. Similarly, there is no showing that petitioner has a vested right to the funds it seeks under a formula for Medicaid reimbursement that would embellish the county's funds at the expense of the state. *City of Livonia v Dep't of Social Services,* 123 Mich App 1, 18-21; 333 NW2d 151 (1983).

Affirmed.